IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN HREZIK,                    )
                                )   Civil Action
          Plaintiff             )   No.  2010-cv-04251
                                )
     vs.                        )
                                )
KEN A MOYER, In his Official    )
Capacity,                       )
                                )
WILLIAM HEIM, Chief of Police   )
of the Reading Police           )
Department,Individually, and    )
in His Official Capacity and    )
                                )
THE CITY OF READING, a City of  )
the Third Class, and a          )
Municipality of the Commonwealth )
of Pennsylvania,                )
                                )
          Defendants            )


                      *   *   *


APPEARANCES:
          KATHLEEN D. DAUTRICH, ESQUIRE
               On behalf of Plaintiff

          DAVID J. MACMAIN, ESQUIRE
               On behalf of Defendants

                      *   *   *

                 O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on Defendants' Motion

for Summary Judgment filed September 20, 2011.  Plaintiff John

Hrezik's Response in Opposition to Defendants' Motion for Summary

Judgment was filed on November 1, 2011.  For the following

reasons, I grant defendant's motion for summary judgment in part and deny it in part.

Specifically, I grant defendants' motion for summary judgment concerning that portion of Count I of plaintiff's Complaint alleging claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments of the United States Constitution.  I deny the remainder of defendants' motion for summary judgment concerning plaintiff's claim in Count I pursuant to Section 1983 for violation of the Fourth Amendment.

In addition, I grant defendants' motion for summary judgment concerning Count II of plaintiff's Complaint and dismiss Count II which alleges claims against defendants William Heim and the City of Reading for negligent training and supervision.

Count III of plaintiff's Complaint incorporates all of the prior paragraphs of the complaint, including the introductory paragraphs and all of Counts I and II.  However, it does not contain any additional or new averments or allegations.  Count III does contain a prayer for relief.[1]

---

[1]    The prayer for relief in Count III states:

> WHEREFORE, the plaintiff demands judgment against the defendants for such pain, mental anguish, discomfort, inconvenience, distress, and property damage as he has endured, or may endure in the amount of $250,000.
>
>> 1.  On Counts I-III, COMPENSATORY AND PUNITIVE DAMAGES;
>>
>> 2.  Plaintiff's costs and legal expenses;
>>
>>> (Footnote 1 continued):

Finally, because there is evidence from which a reasonable jury could conclude that the actions of Police Officer Ken A. Moyer constituted excessive force, Officer Moyer is not entitled to summary judgment or qualified immunity  on plaintiff's Fourth Amendment excessive force claim.

Accordingly, the only claim remaining in this lawsuit is that portion of Count I of plaintiff's Complaint asserting a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment by use of excessive force against defendant Ken A. Moyer, in his official capacity.[2]

<u>JURISDICTION</u>

Jurisdiction is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

---

(<u>Continuation of footnote 1</u>):

> 3.  Any other relief as is just and proper under the facts and circumstances of this case.

> WHEREFORE, PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE IN THIS ACTION.

For the ease of reference throughout this Opinion, I will refer to the forgoing prayer for relief as one seeking "costs and damages", as plaintiff abbreviates it in his heading to Count III.

[2]   The caption of plaintiff's Complaint originally indicated that he was suing "Ken A. Moyer, Individually, and in his Official capacity".  By oral agreement of counsel placed on the record on January 17, 2012, the caption was amended to designate defendant as "Ken A. Moyer, In his Official Capacity".

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Berks County, Pennsylvania, which is located in this judicial district.

PROCEDURAL HISTORY

On August 20, 2010 the plaintiff John Hrezik filed a three-count Complaint against defendants Ken A. Moyer, individually and in his official capacity; William Heim, Chief of Police of the Reading Police Department, individually, and in his official capacity; and the City of Reading, a city of the third class, and a municipality of the Commonwealth of Pennsylvania.

Count I of plaintiff's Complaint alleges claims against defendant Moyer pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution. Specifically, plaintiff alleges that Officer Moyer used unnecessary physical force during the arrest of plaintiff on August 21, 2008, including the use of a Taser[3], and that the Taser caused pain and suffering to plaintiff.

---

[3]     A "Taser" is a non-deadly weapon commonly carried by law enforcement officers.  The Taser administers an electric shock to a suspect by shooting two small probes into the suspect's body.  The probes are connected to the firing mechanism with wires.  Once fired, the probes lodge under the suspects skin and administer an electric shock.  A Taser permits an officer to incapacitate a suspect from a modest distance.  Fils v. City of Aventura, 647 F.3d 1272, 1276 n.2 (11th Cir. 2011).

Count II of Plaintiff's Complaint alleges a derivative § 1983 <u>Monell</u>[4] claim against Reading Police Chief Heim and the City of Reading for negligent training and supervision. Specifically, plaintiff avers that the City of Reading's procedures for training and instructing police officers on the use of Tasers is insufficient, inadequate and deficient.

Count III of plaintiff's Complaint adds only a claim for costs and damages.  It does not aver any new substantive claims.

On January 10, 2011 the Answer and Affirmative Defenses of Defendants City of Reading, William Heim, and Ken Moyer was filed.

On September 20, 2011 Defendants' Motion for Summary Judgment was filed together with Defendants Brief in Support of Their Motion for Summary Judgment and the Statement of Relevant Undisputed Facts in Support of Defendants Motion for Summary Judgment.[5]  On November 1, 2011 Plaintiff John Hrezik's Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff John Hrezik's Brief in Opposition to Defendants' Motion

---

[4]     <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[5]     Defendants' statement of undisputed facts is attached as Exhibit A to defendants' brief.

for Summary Judgment, and Plaintiff John Hrezik's Statement of
Disclosed Material Facts[6] were all filed.

### STANDARD OF REVIEW

In considering a motion for summary judgment, the court
must determine whether "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue of
material fact and that the moving party is entitled to judgment
as a matter of law."  Fed.R.Civ.P. 56(c).  See also Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505,
2509-2510, 91 L.Ed.2d 202, 211 (1986); Federal Home Loan Mortgage
Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443
(3d Cir. 2003).

Only facts that may affect the outcome of a case are
"material".  Moreover, all reasonable inferences from the record
are drawn in favor of the non-movant.  Anderson, 477 U.S. at 255,
106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of
demonstrating the absence of genuine issues of material fact, the
non-movant must then establish the existence of each element on
which it bears the burden of proof.  See Watson v. Eastman Kodak
Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

---

[6]     Plaintiff's statement of disputed facts was filed as an attachment
to plaintiff's brief.

-6-

Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, exhibits, and the parties' statement of facts, the relevant facts, viewed in the light most favorable to plaintiff, are as follows.

Prior to August 21, 2008, plaintiff lived at 2232 Raymond Avenue, Reading, Berks County, Pennsylvania, with Cindy Stump, his former girlfriend, who owned the residence.  In addition, prior to August 21, 2008, Ms. Stump requested plaintiff to leave her home and move out, which plaintiff planned to do on August 22, 2008.  Ms. Stump moved some items out of her home and temporarily moved in with her mother, who lived close by.

On August 21, 2008, Ms. Stump, unsatisfied with plaintiff still being in her home, and after commencing eviction proceedings with the local Magisterial District Justice, obtained a protection from abuse and eviction order against plaintiff from Berks County, Pennsylvania, Court of Common Pleas Judge Scott A. Lash in case number 2000-01367.

At approximately 10:57 o'clock a.m. that day, Captain John Stanton of the Berks County Sheriff's Department together with other members of the Berks County Sheriff's Department, arrived at 2232 Raymond Avenue to serve plaintiff with a protection from abuse and eviction order.  Captain Stanton knocked on the door and asked plaintiff to come to the door several times.

The parties dispute what exactly Captain Stanton said. However, this dispute does not effect the outcome of this motion. Plaintiff contends that Captain Stanton said, "Come on out John. You're not in no trouble."  Defendants allege that Captain Stanton advised plaintiff numerous times that they were there to serve a protection from abuse and eviction order and requested that he come out of the house.

Plaintiff refused to come out of the house.  Plaintiff testified that he said nothing to the officers, but that more officers, including Officer Ken Moyer of the Reading Police Department showed up outside the home.  Plaintiff was locked inside the home and there was a chair propped against the door. Plaintiff started to panic because there were several officers outside the home.  He began calling friends to ask them what he should do.

At approximately, 11:08 o'clock a.m., after receiving a key to the front door from Ms. Stump, Captain Stanton, Officer

-8-

Moyer, Officer Gregory Harwell and Deputy Frank Cataldi attempted to open the door using the key provided by Ms. Stump.  However, because the door was barricaded with the chair, the officers could not gain entry.  The officers then forced their way into the home and found plaintiff in the kitchen.

When the officers came into the kitchen, plaintiff had his hands raised and was in a submissive position.  Plaintiff was asked numerous times to get on the floor.  However, he did not comply.  Instead, plaintiff kept asking "Why?", "What did I do?"

After plaintiff was asked to get on the floor twice, Officer Moyer fired the Taser at him.  Officer Moyer fired the Taser for a five second burst from approximately six feet away. After plaintiff was struck with the Taser probes, he fell to the floor and was controlled by the officers.

Defendants contend that plaintiff was warned numerous times to get on the floor and was told three times by Officer Moyer that if he did not get on the floor he would use the Taser on him.  Plaintiff was in the kitchen, and a kitchen is an area where knives are usually stored.  However, there is no evidence that there was a knife in plaintiff's hand or on the counter near where plaintiff was standing.

After Officer Moyer fired the Taser at plaintiff, plaintiff was taken into custody and examined by emergency medical personnel who removed one Taser probe.  Plaintiff was

then transported to Reading Hospital to have the other Taser probe removed. At the hospital, medical personnel removed the second Taser probe from plaintiff's breastbone. Plaintiff was given antibiotics to ward off the possibility of infection.

After leaving the hospital, plaintiff was taken to Berks County Prison, in Reading, Pennsylvania, where he remained for 15 days. He was given antibiotics twice a day while in prison. After leaving prison, plaintiff did not seek any further treatment, and the area where the Taser probe was removed did not become infected.

While the record is unclear what crimes plaintiff was charged with, it appears that he may have been charged with resisting arrest and obstruction of justice.[7] Plaintiff was subsequently found not guilty of any crime.

DISCUSSION

Section 1983

Plaintiff's constitutional claims are actionable against defendants through 42 U.S.C. § 1983. Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 states:

---

[7]     See Defendants' Exhibit C.

-10-

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under Section 1983, a plaintiff must demonstrate that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right.  Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428 (1986); Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

<u>Count I</u>

In Count I of his Complaint, plaintiff alleges a cause of action under 42 U.S.C. § 1983 for excessive force in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

-11-

In his brief, plaintiff agrees to withdraw his Eighth Amendment claim.[8]  Accordingly, I grant defendants' motion for summary judgment on that portion of Count I of plaintiff's Complaint.

Regarding plaintiff's Fourteenth Amendment claim, defendants contends that to the extent that plaintiff is attempting to assert a substantive due process claim, it is subsumed by his Fourth Amendment claim.  Plaintiff, without citation to any authority, asserts that his Fourteenth Amendment substantive due process rights were disregarded by defendants in this matter.  For the following reasons, I agree with defendants.

In Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) the United States Supreme Court held that:

> a free citizen's claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person...are properly analyzed under the *Fourth Amendment's* "objective reasonableness" standard, rather than under a substantive due process standard."

490 U.S. at 388, 109 S.Ct. at 1867-1868, 104 L.Ed.2d at 450. (Emphasis in original); See also Chatman v. City of Johnstown, 131 Fed.Appx. 18 (3d Cir. 2005).

Here, while defendants were not originally seeking to arrest plaintiff, they ultimately did arrest plaintiff.  The

---

[8]     See Plaintiff John Hrezik's Brief in Opposition to Defendants' Motion for Summary Judgment at page 9.

parties do not dispute that plaintiff was "seized" for purposes of this motion.

Accordingly, because both the United States Supreme Court and the United States Court of Appeals for the Third Circuit have ruled that an excessive force claim may only be brought pursuant to the Fourth Amendment in the context of a seizure, I grant defendant's motion for summary judgment regarding plaintiff's Fourteenth Amendment claim contained in Count I of the Complaint.

<u>Qualified Immunity</u>

Officer Moyer contends that qualified immunity shields him from plaintiff's Section 1983 claims.  Qualified immunity protects government officials from Section 1983 suits under certain circumstances.  Qualified immunity exists to protect officials exercising good faith in their discretionary duties from the unreasonable burdens of litigation.  Any potential good from suits against government officials for discretionary acts is outweighed by the chilling effect such litigation would have on legitimate government activities.  See <u>Butz v. Economou</u>, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895, 916 (1978); <u>Karnes v. Skrutski</u>, 62 F.3d 485, 499 n.13 (3d Cir. 1995).

To overcome an assertion of qualified immunity, a plaintiff must satisfy a two-prong test.  The court must "decide whether the facts, taken in the light most favorable to the

plaintiff, demonstrate a constitutional violation" and "whether the constitutional right in question was clearly established." Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006).

Courts are no longer required to decide the first prong of this test before moving on to the second prong, but it is "often beneficial" for courts to apply the test in this order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565, 576 (2009).

The test for whether a constitutional right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden, 446 F.3d at 492.  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to qualified immunity.  Id.

Qualified immunity is an immunity from suit, not merely a defense to liability.  Pearson, 555 U.S. at 237, 129 S.Ct. at 818, 172 L.Ed.2d at 576; Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001). Accordingly, it is important to resolve questions of qualified immunity at the earliest possible stage of the litigation. Pearson, 555 U.S. at 232, 129 S.Ct. at 815, 172 L.Ed.2d at 573; Saucier, 533 U.S. at 200-201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281.

However, the Third Circuit has explained that

> the importance of resolving qualified immunity
> questions early is in tension with the reality
> that factual disputes often need to be resolved
> before determining whether defendant's conduct
> violated a clearly established constitutional
> right....   A decision as to qualified immunity is
> premature when there are unresolved disputes of
> historical facts relevant to the immunity
> analysis.

Phillips v. County of Allegheny, 515 F.3d 224, 242 n.7 (3d Cir.
2008) (citing Curley v. Klem, 499 F.3d 199 (3d Cir. 2007))
(internal punctuation omitted).

The normal principles of summary judgment apply when
qualified immunity is at issue.  It is inappropriate to grant
summary judgment if there are material factual disputes as to
whether a constitutional violation has occurred or whether the
constitutional right is clearly established.  See Curley,
499 F.3d at 208; Estate of Smith v. Marasco, 430 F.3d 140, 148
n.3 (3d Cir. 2005).

Accordingly, I examine plaintiff's Section 1983 claims
of excessive force to determine whether the Officer Moyer is
entitled to qualified immunity.  Because I find below that
plaintiff has established genuine issues of material fact as to
whether defendant Moyer violated plaintiff's clearly-established
constitutional rights, defendant Moyer is not entitled to
qualified immunity.

<u>Excessive Force</u>

Plaintiff's remaining Section 1983 claim is for excessive force in violation of the Fourth Amendment.  A Section 1983 claim for excessive force by a law enforcement officer is based on the Fourth Amendment protection from unreasonable seizures of the person.  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995) (citing <u>Graham v. Connor</u>, 490 U.S. at 394, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (1989)).  The use of excessive force is itself an unlawful seizure under the Fourth Amendment.  <u>Couden</u>, 446 F.3d at 496.

To decide whether the challenged conduct constitutes excessive force, I must determine the objective reasonableness of the challenged conduct.  <u>Graham</u>, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456; <u>Couden</u>, 446 F.3d at 496.  In making this determination, I must pay careful attention a number of factors, including: (1) the facts and circumstances of each particular case and consider the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455; <u>Brown v. Rinehart</u>, 325 Fed.Appx. 47, 50-51 (3d Cir. 2009); <u>Sharrar v. Felsing</u>, 128 F.3d 810, 821 (3d Cir. 1997).

Other relevant factors include: (1) whether the physical force applied was of such an extent as to lead to injury; (2) the possibility that the persons subject to the police action are themselves violent or dangerous; (3) the duration of the police officers' action; (4) whether the action takes place in the context of effecting an arrest; (5) the possibility that the suspect may be armed;  and (6) the number of persons with whom the police officers must contend at one time. Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005); Sharrar, 128 F.3d at 822.

Because "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation," I must consider the perspective of a reasonable officer on the scene rather than using the 20/20 vision of hindsight in evaluating reasonableness. Graham, 490 U.S. at 396-397, 109 S.Ct. at 1872, 104 L.Ed.2d at 455-456; Couden, 446 F.3d at 497.

Plaintiff contends that excessive force was used on him when Officer Moyer used the Taser on plaintiff.  Depending upon the circumstances, the application of a Taser may be a reasonable use of force.  Woods v. Grant, 665 F.Supp.2d 438, 445 (D.Del. 2009).

Furthermore, as noted recently by my colleague United States District Court Judge Cynthia M. Rufe, in <u>Reiff v. Marks</u>, 2011 U.S.Dist. LEXIS 18205 (E.D.Pa. Feb. 23, 2011), Taser cases within the Third Circuit do not establish bright-line rules of law, but rather reflect the fact-sensitive nature of any determination of reasonableness of the use of a Taser on a person.  In these cases, law enforcement defendants have prevailed on summary judgment motions and Taser use was deemed reasonable where the use was necessary to overcome a suspects resistance to arrest because plaintiff attempted to flee, appeared to threaten officer safety, or was either armed or suspected to be armed.[9]

However, it is more common that a motion for summary judgment on an excessive force claim is denied because genuine issues of material fact exist after resolving all inferences in favor of plaintiff.[10]

I first apply the three <u>Graham</u> factors: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade

---

[9]     <u>Reiff</u>, 2011 U.S.Dist. LEXIS 18205 at *19-20 n. 97. (collecting cases).

[10]    <u>Reiff</u>, 2011 U.S.Dist. LEXIS 18205 at *20-21 n. 98. (collecting cases).

arrest by flight.  490 U.S. at 396, 109 S.Ct. at 1872,
104 L.Ed.2d at 455.

Initially, defendants contend that the officers had
been dispatched to plaintiff's residence to serve a protection
from abuse and eviction order following a domestic dispute.
However, there is nothing in the record to indicate the nature or
basis of the protection from abuse order.  The officers were not
at the residence to arrest plaintiff.  Rather, they were there to
serve the protection from abuse order and eviction notice.  Thus,
the severity of the crime for which the officers responded to the
home is none because there was no crime at all.

On the other hand, plaintiff was apparently charged
with resisting arrest and obstruction of justice.  However, his
resistance was mostly passive (i.e. refusing to come out of the
house and placing his hands above his head in a submissive
position when confronted in the kitchen).  He may have actively
resisted the eviction by placing the chair in front of the door
to block entrance.  However, it is unclear from the record
whether the chair was placed behind the door prior to or
following the officers arrival on the scene to serve the
protection from abuse order, and who placed it there.  Thus,
after assessing the totality of the circumstances, I conclude
that the severity of the crime at issue was minimal.

Next, when viewed from the perspective of a reasonable officer on the scene, I conclude that a jury could reasonably find that plaintiff posed no immediate threat to the safety of the officers when they entered the kitchen.  He was in a area that likely had knives, as all kitchens might.  However, the only evidence of record is plaintiff's testimony--that when surrounded by a number of officers, many of whom were pointing their service weapons at him, and Officer Moyer, who was pointing a Taser at him--plaintiff was standing with his hands raised in a submissive position.

Finally, I conclude that a reasonable jury could find that while plaintiff was passively resisting the lawful authority of the officers involved, there is no evidence that he actively resisted arrest.  Defendant assertion that plaintiff's admitted failure to comply with numerous requests to "peaceably surrender" constitutes active resistance of arrest is belied by the fact that the police officers were not at plaintiff's home to effect an arrest.  Rather, they were there to evict him from the home.

I next apply the additional six factors identified by the Third Circuit in Sharrar v. Felsing, supra: (1) whether the physical force applied was of such an extent as to lead to injury; (2) the possibility that the persons subject to the police action are themselves violent or dangerous; (3) the duration of the police officers' action; (4) whether the action

takes place in the context of effecting an arrest; (5) the possibility that the suspect may be armed; and (6) the number of persons with whom the police officers must contend at one time. 128 F.3d at 822.

First, although the force applied did lead to injury, plaintiff suffered only minor injuries from the officers' use of force: two marks from the Taser prongs, one of which had to be removed at the hospital.

Second, there is no evidence that plaintiff was violent or dangerous.

Third, the duration of the police officers' action was extremely brief. Officer Moyer subjected plaintiff to one five second electric discharge from his Taser. The evidence also indicates that the discharge may have been as little as three seconds.[11]

Fourth, the action taken by Officer Moyer was not originally taken to effectuate an arrest, even though plaintiff was ultimately arrested.

Fifth, there is nothing in the record to suggest that plaintiff was armed, other than his presence in the kitchen, where knives may have been located. However, as indicated in the Facts Section, above, there was no knife in plaintiff's hand or on the counter near where he was standing.

---

[11]    See Defendants' Exhibit D.

Sixth, plaintiff was the only person with whom the numerous officers on the scene had to contend.

Defendants rely on my decision in the matter of McNeil v. City of Easton, 694 F.Supp.2d 375 (E.D.Pa. 2010), for the proposition that Officer Moyer's brief use of the Taser in this case was warranted. I disagree.

Initially, as noted above, I must pay careful attention to the facts and circumstances of each particular case. Graham, supra. The facts of McNeil and the present matter are starkly different.

In McNeil, I found the pertinent facts as follows:

> At approximately 3:30 a.m., an unidentified woman called Northampton County's emergency 911 telephone line to report a domestic dispute in which a woman was calling for help. The 911 caller reported that "the male at the residence never lets the female come to the door when she needs help."

> Defendant Officers Peter Guerriere and Darren Snyder responded to plaintiff's residence, where they heard a woman screaming and loud banging coming from the house. Based upon the nature of the 911 call and the loud noises coming from plaintiff's home, the officers believed that there was an assault in progress and were concerned for the woman's safety.

> Officer Snyder called for backup, and pursuant to Easton Police Department procedure, sought and obtained permission from defendant Lieutenant David Beitler to enter the residence without a warrant. Officers Guerriere and Snyder then entered plaintiff's home.

> Officers Guerriere and Snyder checked the first floor of the home and went to the staircase

-22-

leading to the second floor.  Miss Davis went down to the first floor and was directed to sit down by Officer Guerriere who kept her within his view.

Officer Snyder began to climb the stairs when plaintiff appeared at the top of the stairs and descended three steps.  Officers Guerriere and Snyder ordered plaintiff to come down the rest of the stairs, but plaintiff stopped and refused to comply.  Plaintiff was very angry that the officers were in his home and told them that they would have to shoot him.

Officer Snyder observed targets in the shape of a man's silhouette on the wall or a door with what appeared to be bullet holes from target practice.  Officer Snyder was "very fearful" that plaintiff would obtain a weapon or barricade himself on the second floor, which plaintiff could have accomplished in a matter of seconds.  The requested backup had yet to arrive, and Officer Snyder was "extremely concerned" for the safety of himself, Officer Guerriere, and Miss Davis.

Plaintiff ignored the officers' commands and started to ascend the stairs back to the second floor, which was not yet checked by the police, and where plaintiff could have access to a weapon. Officer Snyder fired his taser, embedding its darts into plaintiff and delivering a five second electric discharge, to immobilize plaintiff and to prevent him from reaching the second floor.

Plaintiff fell to the floor with his hands underneath himself.  After regaining control of his motor skills, plaintiff did not comply with Officer Snyder's commands to show his hands. Officer Snyder then delivered a second five second electric discharge from his taser, after which plaintiff complied and put his hands out to the side.

694 F.Supp.2d at 383-384.

The facts of <u>McNeil</u> and the facts of this case are considerably different.  I find no significant similarity in the

-23-

facts of these two matters, absent the fact that a Taser was involved.  The situation in McNeil was much more volatile, and the risk of danger to the officers from plaintiff much greater. Accordingly, I find defendants reliance on McNeil misplaced.

Based upon the evidence in this case, I conclude that a reasonable jury could conclude (1) that Officer Moyer used excessive force in shooting plaintiff with a Taser under the circumstances; and (2) that the right of an individual to be free from the use of debilitating force after assuming a submissive position is clearly established.  Accordingly, Officer Moyer is not entitled to summary judgment.

### Count II

### Monell Claim

Defendants also seek summary judgment on plaintiff's Monell claim[12], which would attach liability to all defendants under a theory of failure to properly train police officers.

To prevail on a Monell claim, a plaintiff must establish that: (1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom.  Pelzer v. City of Philadelphia, 656 F.Supp.2d 517, 531 (E.D.Pa. 2009)(Stengel, J.)(citing Board

---

[12]    Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

-24-

of the County Commisioners of Bryan County v. Brown,
520 U.S. 397, 403-404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

The Third Circuit has noted that establishing municipal
liability on a Monell claim for inadequate training is difficult.
Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

Generally, deficient training can only amount to the
requisite deliberate indifference "where the failure to train has
caused a pattern of violations." Berg v. County of Allegheny,
219 F.3d 261, 276 (3d Cir. 2000). Respondeat superior or
vicarious liability will not attach under Section 1983. It is
only when the execution of the municipality's policy or custom
inflicts injury that it may be held liable under Section 1983.
City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197,
1203, 103 L.Ed.2d 412, 424 (1989).

Furthermore, for municipal liability to apply, there
must be a violation of a plaintiff's constitutional rights.
Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir.
2008)(citing   Brown v. Pennsylvania Department of Health
Emergency Medical Training Services Institute, 318 F.3d 473, 482
(3d Cir. 2003).

Here, plaintiff has not specifically identified a
policy or custom of Officer Moyer, Chief Heim or the City of
Reading which has inflicted injury on plaintiff. Rather,
plaintiff seems to put the onus on defendants to come forward

with evidence to disprove the allegations contained in plaintiff's Complaint that defendants had a duty and responsibility of developing policies regarding the use of a Taser and had a further duty to supervise the training and instruction of officers.

As noted above, plaintiff cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999). Plaintiff must establish the existence of each element on which it bears the burden of proof. See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

While I have determined that there are genuine issues of material fact concerning whether there is a violation of plaintiff's constitutional rights in this matter, contrary to plaintiff's assertions, that is not the end of the inquiry. Because plaintiff has not come forward with any evidence that any particular practice or custom of Officer Moyer, Chief Heim or the City of Reading is deficient, and has not produced any evidence of a casual connection between that policy or custom and plaintiff's alleged injury, plaintiff fails to sustain his burden of production on his Monell claim.

What plaintiff appears to attempt is to place respondeat superior liability on Chief Heim and the City of Reading for the alleged violation of a plaintiff's constitutional rights by Officer Moyer.  That is not permitted under the law.  See City of Canton, 489 U.S. at 385, 109 S.Ct. at 1203, 103 L.Ed.2d at 424.

Accordingly, I grant defendants' motion for summary judgment on Count II of plaintiff's Complaint.

Count III

Count III of plaintiff's Complaint contains no new substantive claims.  Rather, it only seeks costs and damages.  Because I have denied defendants' motion for summary judgment on his Fourth Amendment claim contained in Count I of the Complaint, I consider Count III to be part of plaintiff's prayer for relief regarding that surviving portion of Count I.

CONCLUSION

For all the foregoing reasons, I grant Defendants' Motion for Summary Judgment in part and deny it in part.  I deny summary judgment on that portion of Count I asserting a Section 1983 claim for a violation of the Fourth Amendment by use of excessive force.  I grant defendants summary judgment on plaintiff's § 1983 claims under the Eighth and Fourteen Amendments contained in Count I of his Complaint.  Furthermore, I dismiss all of Count II of plaintiff's Complaint.  Finally, I

will consider Count III a part of plaintiff's prayer for relief on his remaining Section 1983 claim for violation of his Fourth Amendment rights in Count I.

Accordingly, the only claim remaining in this lawsuit is that portion of Count I of plaintiff's Complaint asserting a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment for excessive force by defendant Ken A. Moyer in shooting plaintiff with a Taser gun.